```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION
```

FILED
97 APR -8 AM 9:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
APR - 8 1997

REBECCA H. YANCEY,               )
                                 )
    Plaintiff,                   )
                                 )
v.                               )    CV95-H-3286-S
                                 )
POOL EQUIPMENT & SUPPLY CO.,     )
INC.,                            )
                                 )
    Defendant.                   )

## MEMORANDUM OF DECISION

Presently before the Court is the February 14, 1997 motion for summary judgment filed by defendant. Pursuant to an Order entered February 18, 1997, the motion was deemed submitted, without oral argument, on March 18, 1997.

### I. Procedural History

Plaintiff commenced this action on December 20, 1995 by filing a two-count complaint in this Court. Count I of the complaint alleged that defendant had discharged plaintiff because of her sex and/or in retaliation for plaintiff's contacts with the EEOC regarding defendant's alleged employment practices, both in violation of Title VII of the Civil Rights Act of 1964. Count II alleged that defendant had paid plaintiff less than similarly-situated male workers, in violation of both Title VII and the Equal Pay Act.

29

## II. Standards for Evaluating a Summary Judgment Motion

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not

bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. <u>Lewis v. Casey</u>, ____ U.S. ___, 116 S.Ct. 2175 (1996).

### III. Relevant Undisputed Facts

Pool Equipment & Supply Co., Inc. ("Pool Equipment") was established in 1986 in Montgomery, Alabama, and is in the business of selling wholesale pool supplies. (Hughes Aff.). In

4

1991, Pool Equipment opened a Birmingham branch, and it opened an Atlanta branch in December 1992. (Hughes Depo. at 42-43). Pool Equipment's central office in Montgomery received daily reports from the other branches, and an operations manager in Montgomery set the salaries for the manager of each branch location. (Hughes Aff.; Hughes Depo. at 28-30, 37-39, 46). However, in all other respects, the branch offices operated independently: the branch managers had the authority to hire and fire employees, determine employee salaries, maintain an independent inventory, generate sales, approve credit, and collect accounts receivable. (Hughes Aff.).

The first manager of the Birmingham branch, Bill Beavers, was paid an annual salary of $24,075.00. (Defendant's Ev. Submission, Ex. F). In December 1992, when the Atlanta branch was opened, its first manager was Mark Nichols, who received an annual salary of $37,050.00. (Hughes Depo. at 42-43, Ex. 4). When Nichols was terminated in January 1994 for poor performance, he was replaced by Mark Lurie, who received a salary of $38,546.00. (Id. at 43-45, Ex. 3).

The Birmingham branch was unprofitable under Beavers' leadership, and Beavers was discharged in early 1993. (Id. at 50-51). Responding to an advertisement in a newspaper, plaintiff sent a letter and resume to Pool Equipment dated March 29, 1993, seeking the branch manager's position. (Yancey Depo., Ex. 1). She was interviewed twice by Pool Equipment's operations manager,

5

Jimmy Gardener, and was hired in early May 1993. (Id.). Plaintiff's salary was set at $25,000.00 per year. (Id.).

The Birmingham branch continued to perform poorly in 1993, and plaintiff was discharged in February 1994, when Pool Equipment closed the Birmingham branch. (Yancey Aff.).[1]

## IV. Analysis

As noted above, Count I of the complaint alleges that plaintiff was terminated because of her sex and/or in retaliation for her contacts with the EEOC regarding certain alleged employment practices of Pool equipment. The record contains evidence that Carroll Hughes, the president of Pool Company, disliked plaintiff because she was a woman. (Chiasson Aff.). In addition, plaintiff has produced evidence that Hughes instituted racially discriminatory practices at Pool Equipment. (Yancey Aff.). Plaintiff's affidavit and deposition state that plaintiff reported these practices to the EEOC in late January 1994. (Yancey Aff.). In addition, plaintiff testified in her deposition that she had a telephone conversation with Hughes one week prior to her termination in which she advised him of her visit to the EEOC. (Yancey Depo. at 182-83).

These facts, although disputed with alacrity by defendant,

---

[1] A summary of the facts relevant to Count I can be found in the Count's discussion of the merits of Count I.

are sufficient to allow a reasonable trier of fact to conclude that retaliation and/or sex was a "motivating factor" in Hughes' February 1994 decision to close the Birmingham branch office and terminate the employment of plaintiff and the several other persons employed there.[2]  Thus, the Court must deny defendant's motion for summary judgment with respect to Count I.

Count II of the complaint alleged that plaintiff was paid less than similarly-situated male employees, in violation of both Title VII and the Equal Pay Act, 29 U.S.C. § 206(d)(1).  The Court must analyze these two statutory claims separately, because of the different burdens of proof required for recovery under each.

A plaintiff establishes a prima facie case under the Equal Pay Act by showing that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'"  Miranda v. B & B Cash Grocery Store, 975 F.2d 1518, 1532 (11th Cir. 1992).  When proving unequal pay under the Equal Pay Act, the plaintiff must point to a "comparator," that is, a male employee who performed substantially the same work and

---

[2]There is evidence in the record regarding the poor performance of the Birmingham branch, and evidence indicating that Hughes consulted extensively with his accountant, who had advised him to close the Birmingham branch due to its lack of profitability.  (Hughes Depo. at 51-55, 100-110, 121-22).

7

received more money. In addition, the Equal Pay Act imposes a "geographic limitation" on potential comparators, in the form of the statutory requirement that the disparity in pay must exist within the same "establishment." See 29 U.S.C. § 206(d)(1); Mulhall v. Advance Security, Inc., 19 F.3d 586, 590 (11th Cir. 1994).

The term "establishment" generally "refers to a distinct physical place of business rather than to an entire business or 'enterprise' which may include several places of business. Accordingly, each physically separate place of business is ordinarily considered a separate establishment." 29 C.F.R. § 1620.9(a). However, in "unusual circumstances," several physical locations may be considered a single "establishment," where, for example, a central administrative unit hires all employees, sets wages, and assigns the location of employment, where employees are frequently exchanged among employment locations, and where the daily duties at the various locations are "virtually identical and performed under similar working conditions." 28 C.F.R. § 1620.9(b). As the Eleventh Circuit observed in Mulhall, the "hallmarks" of the multi-location "establishment" are "centralized control of job descriptions, salary administration, and job assignments or functions." Mulhall, 19 F.3d at 591.

Here, it is undisputed that plaintiff's work was substantially similar to that performed by the Atlanta branch managers. (Hughes Depo. at 59-63). It is also undisputed that

8

plaintiff was paid less than the Atlanta managers. However, plaintiff received pay slightly greater than that given to her predecessor in the Birmingham office. Thus, plaintiff's prima facie case under the Equal Pay Act rises or falls on whether the Birmingham and Atlanta offices are considered part of the same "establishment" under § 206(d)(1).

The undisputed evidence in the record demonstrates the absence of the tight centralized control required under § 1620.9(b) to create a multi-location "establishment." Although the branch mangers were hired by the central office, which also determined their salaries, that is the only example of central control shown in the record. The individual branches hired and fired their own employees, set employees' salaries, and handled their own sales, inventory, and accounts receivable. The Montgomery office of Pool Equipment exerted little, if any, day-to-day authority over the operations of the individual branches. Under these circumstances, the Court must conclude that the Birmingham and Atlanta offices were not part of the same "establishment" under the Equal Pay Act. And, as noted above, plaintiff was paid more than the only comparator in the Birmingham office (Bill Beavers). Thus, plaintiff's Equal Pay Act claim must fail as a matter of law.

Plaintiff's Title VII claim based on unequal pay is similarly flawed. Here, the undisputed evidence is that plaintiff was paid more than the only male manager of the

9

Birmingham branch. In addition, it is undisputed that the disparity in pay between the Birmingham and Atlanta managerial positions existed <u>before</u> plaintiff was hired, when both positions were occupied by men. Bill Beavers, the first manager of the Birmingham branch, worked at Pool Equipment until early 1993, and received a salary of $24,075.00. In December 1992, Mark Nichols was hired to manage the Atlanta branch and was given a salary of $37,050.00. Plaintiff was not hired until May 1993. Under these circumstances, no reasonable trier of fact could conclude that Pool Equipment intentionally paid plaintiff less because of her sex, because it established the pay disparity she complains of before she (or any other woman) was employed as a branch manager.

For the foregoing reasons, the Court concludes that defendant's motion for summary judgment is due to be granted with respect to the claims asserted in Count II of the complaint. The Court expressly finds that there is no just reason for delay, and will direct the clerk to enter a final partial judgment in defendant's favor with respect to Count II. Fed. R. Civ. P. 54(b). However, the presence of factual disputes precludes judgment as a matter of law with respect to Count I, and so defendant's motion will be denied with respect to plaintiff's

claim of discriminatory and/or retaliatory discharge.

DONE this \_\_\_\_8TH\_\_\_\_ day of April, 1997.

                                         SENIOR UNITED STATES DISTRICT JUDGE